**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIGHT HEAD LLC, | |
| Plaintiff, | Case No. 1:25-cv-011144 |
| v. | |
| | JURY TRIAL DEMANDED |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**VERIFIED COMPLAINT**

Plaintiff Bright Head LLC (referred to herein as "Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, and states as follows:

**I.      JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction), and seeks injunctive relief, monetary damages, and other appropriate relief against the Defendants identified in Schedule A.

2.      In addition, pursuant to Fed. R. Civ. P. 64 and 735 Ill. Comp. Stat. 5/4-101(1), (5), and (8), Plaintiff seeks a writ of prejudgment attachment to secure Defendants' assets—including

1

but not limited to funds held in marketplace accounts and registered trademarks used in connection with the sale of infringing products—to ensure satisfaction of any final judgment in this matter.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.   INTRODUCTION

4. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. The existence of Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market, a market within which Plaintiff should have exclusionary rights under its patent.

5. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists

2

between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

## III.    THE PARTIES

6.      Plaintiff, Bright Head LLC, is a Delaware Limited Liability Company registered to do business in the State of New York with its principal place of business at 400 Rella Blvd, #156, Montebello, NY 10901.

7.      Plaintiff Bright Head LLC is the owner, by assignment, of all right, title, and interest in US Patent No. ███████ ("Plaintiff's Patent"). A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

8.      Plaintiff's Patent was issued on ███████. *See* **Exhibit 1**.

9.      Plaintiff's Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

10.     Plaintiff's Patent covers ████████████████████████.

11.     Specifically, Claim 1 of the Plaintiff's Patent reads:



*See*, **Exhibit 1**.

12.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

13.     The success of the invention claimed in Plaintiff's Patent has resulted in significant infringement of Plaintiff's Patent. The significant infringement has hampered Plaintiff's ability to generate and expand market share for its line of products which embody Plaintiff's Patent ("Plaintiff's Products"). Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce

stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"). True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

14.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, including those in Illinois, using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and sell and/or offer for sale Unauthorized Products to residents of Illinois.

15.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

16.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

17.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like

Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

18.    Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

19.    These irregularities and indicia include, but are not limited to, ███████████ ████████████████████████████████████████████████████████████████ ██████████████. *See* **Exhibit 3**, screenshots taken on September 3, 2025, of the first image from a listing for each of the Defendants' Unauthorized Products, showing nearly identical Unauthorized Products which include advertising each Unauthorized Products ████████████ ███████████████████████████████████████████.

20.    E-commerce store operators like Defendants frequently communicate through QQ.com chat rooms and utilize websites such as sellerdefense.cn, which offer tactics for managing multiple online marketplace accounts and evading detection by intellectual property owners. These platforms not only provide technical guidance on avoiding enforcement actions but also actively monitor newly filed intellectual property lawsuits in the United States. Upon detection, they alert

store operators of impending enforcement by publishing blog posts or bulletins and recommending that operators immediately cease infringing activities, liquidate financial accounts, and switch payment processors to avoid asset restraint.

21.     Notably, Chinese law firms and service agencies play an active role in this process—monitoring U.S. filing systems in real time and using that information to solicit business from accused infringers.

22.     As a result, this ecosystem has evolved into a lucrative industry—not only for the infringing sellers, but also for the service providers who profit from helping them exploit intellectual property loopholes and avoid accountability. *See*, Figure 1, which is a screenshot of sellerdefense.cn, translated from Chinese to English by the default translator in the Mozilla Firefox browser, taken on September 3, 2025, showing a list of Schedule "A" cases filed as recently as August 8, 2025 in the United States, including the Northern District of Illinois, as well as QR codes to join WeChat groups and to connect infringing sellers to "United States law firm case settlement agent[s]."



*Figure 1*

23.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

24.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's

Patent in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet

25.     Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

### ADDITIONAL SUPPORT FOR JOINDER

26.     Under Fed. R. Civ. P. 20, defendants "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

27.     Additionally, for patent claims, the America Invents Act states that "accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if— (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and (2) questions of fact common to all defendants or counterclaim defendants will arise in the action." 35 U.S.C. § 299(a).

28.     Regarding the second prong of both Fed. R. Civ. P. 20 and Section 299(a)(2) of the AIA requiring a common questions of law or fact, it is clear through **Exhibit 2** and **Exhibit 3**, that

this matter is in regards to nearly identical products which infringe upon Plaintiff's Patent sold by a single entity or group of entities, all based in China, through accounts on a singular e-commerce platform – Amazon.

29. The infringement analysis for Unauthorized Products shown in **Exhibit 2** and **Exhibit 3** would be nearly identical.

30. Further, potential issues related to defenses, counterclaims, infringement/non-infringement contentions, claim construction, and other pleadings and discovery would significantly overlap given the commonalities between the infringing Amazon accounts and Unauthorized Products. *See* **Exhibit 2** and **Exhibit 3**.

31. Regarding the first prong of Fed. R. Civ. P. 20 and Section 299(a)(1) of the AIA requiring Defendants' unlawful conduct needing to arise out of the "same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process," again, the evidence suggests that this prong is also satisfied. *See* **Exhibit 3**, which is a screenshot of Unauthorized Products sold by each of the Defendants showing that the products are identical or nearly identical.

32. There are other form factors for products which potentially infringe Plaintiff's Patent; however, Defendants use the same or nearly the same form factor for Unauthorized Products which infringe Plaintiff's Patent. *See* Table 1 below.



Table 1

33.     Given the nearly identical form factor and advertising indicia as shown in **Exhibit 2** and **Exhibit 3**, and the fact that all Defendants appear to be Chinese infringers, Plaintiff believes Defendants are using a common manufacturer or related manufacturers to produce the subset of infringing and Unauthorized Products shown in **Exhibit 2**.

34.     This common manufacturer or related manufacturers and common issues of law and fact related to claim construction, infringement contentions, and other aspects of patent litigation are sufficient to allow joinder of the Defendants under Fed. R. Civ. P. 20 and Section 299 of the AIA.

35.     Requiring separate lawsuits for each Defendant e-commerce store would lead to duplicative proceedings involving the same factual and legal issues. This would unnecessarily burden both the Court and the parties and create a significant risk of inconsistent judgments. Joinder in this context promotes judicial efficiency, ensures consistent adjudication, and is particularly appropriate in patent enforcement actions, where defendants frequently operate anonymously or in coordination across digital marketplaces.

36.     Accordingly, joinder of the Defendants in this action is proper under 35 U.S.C. § 299(a), fully supported by the weight of legal authority in this jurisdiction, and warranted based on the substantial identity of products, coordinated conduct, and overlapping questions of law and fact that unify all claims in this case.

37.     Lastly, the limitations on joinder in the Patent Act as amended by the American Invents Act are waivable, it would be improper to sever the claims against any of the Defendants at this stage of the proceedings. See 35 U.S.C. § 299(c) ("A party that is an accused infringer may waive the limitations set forth in this section with respect to that party").

## IRREPARABLE HARM

38.     Defendants' unlawful actions have caused and continue to cause Plaintiff irreparable harm.

39.     Defendants' selling and offering to sell Unauthorized Products on e-commerce stores on Amazon.com draws traffic away from Plaintiff's own online store.

40.     Defendants' selling and offering to sell Unauthorized Products has been used to build up the good will associated with Defendants' storefront and brand name, all at the expense of Plaintiff.

41.     As a result of Defendants' selling and offering to sell Unauthorized Products, not only is traffic drawn away from Plaintiff's online store, but traffic is also directed to other e-commerce stores on Amazon selling similar goods to Unauthorized Products.

42.     The lost traffic, and potential sales garnered therefrom, is immeasurable.

43.     Further, the loss of potential goodwill associated with the lost sales is also immeasurable.

44.      Additionally, Defendants sale of Unauthorized Products is capturing market share that should exclusively belong to Plaintiff, since Unauthorized Products infringe upon Plaintiff's Patent and Plaintiff should have exclusivity over products embodying Plaintiff's Patent.

45.     At a minimum, Defendants have over ███████ of market share resulting from the sale of Unauthorized Products. *See* **Exhibit 4**, which is a table showing the e-commerce store numbers corresponding with the numbers shown in Schedule "A," attached hereto; the number of Unauthorized Products Plaintiff has identified each e-commerce store is selling; the average cost per unit of their infringing products (e.g. if an e-commerce store sells two infringing products, one at $10.00 and one at $15.00, the average cost per unit is $12.50); the number of reviews for associated with each e-commerce stores sale of Unauthorized Products, and conservative projection of lost revenue calculated by multiplying the average cost per unit of their infringing products and the number of reviews.

46.     Given that sales of Unauthorized Products likely exceed the number of reviews for the Unauthorized Products, Defendants likely captured a much greater market share than ███████.

47.     While the ███████ estimated market share loss is based upon Amazon reviews, data from third party software suggests that the actual loss of market share is much higher.

48.     Plaintiff uses two types of third-party software programs, known as Smart Scout and Helium 10, which track product IDs on Amazon, referred to as ASINs, and estimates the sales figures for any particular ASIN over the previous month and over the previous twelve months.

49.     According to these third-party software programs, Plaintiff's lost market share is at least ███████ over the past month and ███████ over the last twelve months. *See* **Exhibit 5**, which is a table listing each of the ASINs listed in Schedule A and projected sales figures from either Smart Scout or Helium 10, if any, for each ASIN.[1]

50.     This market share should exclusively belong to Plaintiff.

51.     The above figures do not include the loss of goodwill associated with the positive reviews, number of actual purchases, and other metrics which could increase the likelihood of future sales.

52.     Further, based upon the cost per unit of Plaintiff's Products embodying Plaintiff's Patent, and the prices Defendants are selling Unauthorized Products, Plaintiff is suffering from price erosion as well, as Defendnats' prices are not sustainable for Plaintiff.

53.     Due to loss of market share, loss of current and future sales, and price erosion, Plaintiff has and continues to suffer irreparable harm from Defendants' unlawful conduct.

**COUNT I – PATENT INFRINGEMENT (15 U.S.C. § 271)**

54.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

55.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction,

---

[1] ASINs without any sales figures does not mean there were no sales corresponding to those ASINs, but rather that the third-party software programs did not collect any data as to those ASINs. Additionally, any sales figures are projections, and actual sales figures are likely to be higher, however, those figures can only be obtained by Court Order from Amazon.

occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

56.     As shown in the exemplary claim charts attached hereto as **Exhibit 6**, the products being sold by each Defendant infringes at least Claim 1 of Plaintiff's Patent, under multiple theories of infringement. The claim charts of **Exhibit 6** is illustrative only and are made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of Plaintiff's Patent.

57.     Specifically, Defendants have infringed and continue to infringe each and every claim of Plaintiff's Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff. In addition to directly infringing, Defendants have also indirectly infringed Plaintiff's Patent by actively inducing or contributing to infringement by others, including consumers and downstream sellers, who purchase, use, or resell the infringing products in violation of Plaintiff's exclusive rights.

58.     Defendants have profited by their infringement of Plaintiff's Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

59.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm

resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

60.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

61.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of Plaintiff's Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

62.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II – UNFAIR COMPETITION (15 U.S.C. §1125(a))

63.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

64.     Despite Plaintiff having valid and enforceable patents, which were embodied in Plaintiff's Products, and sold to consumers in what should have been an otherwise exclusive market, Defendants have developed, manufactured, imported, advertised, and/or sold Unauthorized Products by make advertising claims in active concert and in a manner likely to increase sales of Unauthorized Products at the expense of Plaintiff. For example, Defendants make advertising claims related to Unauthorized Products motion sensors and USB charging in their initial product image for their Amazon listings. *See* **Exhibit 2** and **Exhibit 3**.

65. Furthermore, Defendants' infringing activity, coupled with their shared manufacturing and advertising practices, has prevented Plaintiff from generating and expanding its market share in what should have been an exclusive field.

66. Defendants' Unauthorized Products and advertising practices have deprived Plaintiff of at least ███████ worth of market share, but likely closer to ███████ just over the last twelve months. *See* **Exhibit 4** and **Exhibit 5**.

67. On information and belief, Defendants are shipping Unauthorized Products to the United States so that orders on Amazon.com can be fulfilled quickly, including with a two-day "Prime" delivery window. *See* **Exhibit 2**, showing that Defendants do offer Prime 2-day shipping.

68. Defendants' use of Seller Aliases through third-party marketplaces permits obfuscation of their identities while continuing to ship Unauthorized Products into the U.S.

69. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

70. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

71. Additionally, since Defendants can obfuscate their identities, there is little to no recourse for Plaintiff through other means, such as the International Trade Commission.

72. Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud U.S. customers with infringing goods and evade legal and financial responsibilities for their infringement.

73. Specifically, Defendants have been observed engaging in the following unlawful activities:

a. Exploitation of Marketplace Accounts: Defendants systematically divert funds from marketplace accounts into personal or untraceable accounts, thereby unlawfully extracting financial resources from the marketplace.

b. Unlawful Storefront Closure: Upon being detected or facing financial scrutiny, Defendants promptly close their storefronts to avoid further investigation or legal consequences.

c. Reopening Under New Entities: After closing the storefronts, Defendants frequently reopen new business entities or storefronts under different names, thereby circumventing legal and financial accountability and continuing their infringing activities.

74. Collectively, these actions constitute unfair competition as Defendants fool consumers into purchasing infringing products, undermine fair market practices, and harm both the integrity of the marketplace and legitimate competitors.

75. Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

**COUNT III – PREJUDGMENT ATTACHMENT (735 ILCS 5/4-101 et seq.)**

76. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

18

77.     Pursuant to 735 ILCS 5/4-101 *et seq*., Plaintiff is entitled to prejudgment attachment of assets held by Defendants, including any funds maintained in online marketplace accounts or financial institutions, as well as any intellectual property rights held by Defendants, including but not limited to registered trademarks, in order to secure satisfaction of a judgment.

78.     Defendants have engaged in unlawful conduct, including willful patent infringement and unfair competition in violation of the Lanham Act.

79.     Plaintiff is entitled to attachment pursuant to 735 ILCS 5/4-101(1), because Defendants are nonresidents of the State of Illinois and/or operate through foreign entities beyond the jurisdictional reach of this Court for collection purposes.

80.     Attachment is also proper under 735 ILCS 5/4-101(5), because on information and belief, Defendants are about to fraudulently conceal, assign, or otherwise dispose of their property or effects with the intent to hinder, delay, or defraud creditors including Plaintiff.

81.     Additionally, attachment is appropriate under 735 ILCS 5/4-101(8), because, on information and belief, Defendants fraudulently concealed and continue to conceal their identities and assets to avoid the jurisdiction of the Court and to frustrate enforcement of any judgment.

82.     On information and belief, Defendants have used fictitious seller aliases, false registration data, and offshore bank accounts, and have operated multiple storefronts in parallel to carry out infringing sales. These tactics strongly suggest an intent to move assets out of reach and obstruct enforcement of any judgment entered in this case.

83.     Plaintiff seeks the issuance of a writ of attachment directed to third-party payment processors, financial institutions, online marketplace platforms, and the U.S. Patent and Trademark Office, including but not limited to Amazon, PayPal, and USPTO, to restrain and preserve funds,

trademark registrations, and other assets in accounts associated with the Defendants identified on Schedule "A."

84.    Prejudgment attachment is necessary and appropriate to ensure that any judgment rendered in this case is not rendered ineffectual due to the dissipation, concealment, or transfer of assets derived from Defendants' infringing and deceptive conduct, including any intellectual property they hold or control.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

   b. Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3) That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4) That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5)  That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6)  That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7)  A finding that this case is exceptional under 35 U.S.C. § 285.

8)  A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9)  That Plaintiff be awarded its reasonable attorneys' fees and costs.

10) That Plaintiff be awarded a writ of attachment pursuant to 735 ILCS 5/4-101 *et seq*., authorizing the restraint and preservation of Defendants' assets, including funds held in online marketplace accounts, financial institutions, and any registered trademarks or other intellectual property held by or associated with Defendants, in order to secure satisfaction of any judgment entered in this case.

11) Award any and all other relief that this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date:  September 15, 2025                    Respectfully submitted,

/s/ Sameeul Haque
Sameeul Haque
samee@h3lp.law
Haque III Legal Practice, LLC
205 N. Michigan Ave., Ste. 810
Chicago, IL 60601
T: 847.401.6113

*Counsel for Plaintiff, Bright Head, LLC*

**VERIFICATION**

I, Sason Gabay, hereby certify as follows:

1.      I am the Chief Executive Officer for Bright Head LLC. As such, I am authorized to make this Verification on Bright Head LLC's behalf.

2.      I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in _____New York_____ on September __15__, 2025

_Sason Gabay_
_____
Sason Gabay
CEO
Bright Head LLC